IN RE HANNAH B. PIERCE'S ESTATE,

DON C. POLLARD, ADMR.

HANNAH B. PIERCE, APT.

BURTON B. PIERCE, ADMR.

SAMUEL B. PIERCE, APPEE.

JANUARY TERM, 1896.

*Guardian and ward.   Evidence to show funds paid over.
Guardian may be charged rental for ward's   estate.
No compensation allowed if no account is kept.
Guardian cannot mortgage ward's estate to
secure personal debt.*

1.  The question being whether the guardian had paid over the funds of his infant ward, it is competent to show, upon a trial thirty years after the ward became of age, and when both the ward and guardian are dead, that the financial condition of the ward was such, and that the transactions between the ward and guardian were such at about the time he attained his majority as to render it probable that he would demand and receive, and that he did receive the amount his due.

2.  If a decree of the probate court adjudging the estate of the guardian liable to the estate of the ward had been obtained by the administrator of the ward, it was competent for the administrator of the guardian to show that this decree had been appealed from, and that the sums upon which the decree was based had in fact been paid.

3.  Where it appears that a son has occupied a house upon his mother's farm, rendered certain services about the carrying on of the farm, and received certain of the products of the

farm, and where the commissioner finds that at a certain time neither party was indebted to the other by reason of these transactions, it is immaterial what services were rendered or what products were received.

4. Upon the recommittal of a report for hearing upon a particular subject, and no other, it is not reversible error if the commissioner receives testimony relevant to some other subject, provided his previous decision upon that subject is not changed by the testimony.

5. It is permissible to show that what purported on the face of the deed to be a sale and conveyance of the ward's real estate was in fact a transaction to secure by mortgage a personal debt of the guardian.

6. In this case the guardian's account should be stated upon the theory that the title to this real estate, which he continues to occupy afterwards, remains in the ward.

7. Where the guardian takes possession of the ward's real estate, keeps and manages the same, receiving all the rents and profits, keeping no account whatever of what he receives, it is proper to charge him with a sum equal to a fair rental value of the same.

8. The administrator of the guardian should be allowed nothing for the care of ward's estate subsequent to the appointment of an administrator upon her estate, although the probate court may have directed him to take charge of said estate.

9. The finding of the commissioner that there was nothing due between Hannah B. and Samuel B. at the time he was appointed as her guardian in 1888, conclusively determines that neither party can recover in respect to the note and two receipts which were outlawed upon their face at that time.

10. A guardian who takes possession of the estate of his ward and keeps no account of his receipts and disbursements, and thereby renders it impossible to make a statement of such account, is entitled to nothing for his own services.

11. If a party, upon an accounting before a commissioner, has tendered and tried a particular issue, he cannot object for the first time before the supreme court, that a part of the item ought to have been brought before the probate court in another manner.

Appeal from an order of the probate court for the District of Windsor. Heard upon the report of a commissioner and

exceptions of the appellee thereto, at the May term, 1895, Windsor county, TAFT, J., presiding. Judgment overruling the exceptions and in accordance with the account as stated by the commissioner. · The appellee excepts.

This was an accounting of Burton B. Pierce, as administrator of Samuel B. Pierce, settling the account of said Samuel B. as the guardian of Hannah B. Pierce. The following are the material facts as reported by the commissioner.

Alanson Pierce died in 1851 and left by will his estate, both real and personal to his wife, the said Hannah B. Pierce. The real estate thus left was a homestead farm, the Preston lot so called, and about one hundred and forty acres of wood and pasture land in Cavendish. Alanson and Hannah B. had three children ; Augusta, born about 1829, Samuel B., born about 1839, and Fernando, whose age did not appear, but who had married and deceased before 1869, leaving several minor children. Augusta Pierce never married and died intestate December 28, 1893. Samuel B. died intestate January 5, 1894. Hannah B. Pierce died June 23, 1892, also intestate.

After the death of her husband in 1851, Hannah B. Pierce continued to live upon the homestead farm and carried on and managed the same with so much success that in 1869 she had accumulated some property in addition to what was left her by her husband. Augusta Pierce lived with her, and she also took care of the minor children of Fernando.

About the time Samuel B. became of age he married and removed to Claremont, N. H., where he lived until the fall of 1869, when he came back to Vermont and moved into what was known as the "Red House" upon the homestead farm. There was also upon said farm another house built after the "Red House," which was known as the "White House," and in which Hannah Pierce with her family lived. Samuel B. continued to live in the "Red House" until it was

42

destroyed by fire in 1881. At first he did team work for various parties and also worked to some extent about the farm, receiving some portion of the products of the farm. He gradually assumed more and more the management of the farm, until in the year 1881 he had come to be the virtual manager of the property. His mother had gradually lost the use of her intellectual faculties, and was at all' times after 1881 incapable of contracting for herself. By that time Samuel B. had come to be treated as the owner of the stock and personal property upon the farm, which he bought and sold at his pleasure, although it did not appear that the same had ever been transferred to him by his mother.

In 1881 the "Red House" and the barns upon the farm were destroyed by fire. This fire was occasioned by an attempt upon the part of Samuel B. to burn up a wasp's nest; and the commissioner found that it was due to gross carelessness upon his part. After the destruction of the "Red House," Samuel B. moved into the "White House," where he continued to live with his mother until her death. Augusta also lived with her mother. She had gradually come to take care of the household affairs in the same way that Samuel B. had of matters out of doors.

About 1882 Samuel B. began the erection of a new barn to take the place of the one destroyed by fire, and also moved the "White House" from where it stood to another location. The commissioner found that the barn was constructed on a much larger scale and in a much more expensive manner than it ought to have been, and that the moving of the house was unnecessary. He further found in a subsequent report that the barn was built and the house moved by Samuel B. without any arrangement with his mother, and without any intention upon his part of charging his mother anything for so doing.

May 4, 1887, Samuel B. was appointed guardian of his mother, Hannah B., who was then adjudged an insane person. July 11, 1887, he obtained a license from the probate

court to sell the real estate of his ward for the purpose of putting the proceeds thereof at interest or investing the same in stock and bonds. Neither before or after his appointment as guardian did Samuel B. Pierce keep any account between himself and his mother showing his receipts and expenditures in respect to her property and her care.

In October, 1893, he was notified to appear before the probate court to settle his guardian account. He did appear at that time and said he thought the accounts ought to be called even. Owing to the fact that the judge could not be present, the matter was not disposed of at that time, and although he made several attempts previous to his death to obtain a hearing no such hearing was ever had.

At the hearing before the commissioner the administrator of Samuel B. presented an account of which the credit side consisted of two items. Item No. 2 was for the sale of bank stock sold by Samuel B., as the commissioner at first supposed, subsequently to his appointment as guardian. This item was credited in the account at its face value.

Item No. 1 was a credit of $4,000 received from sale of real estate. It appeared that July 18, 1887, after having obtained license from the probate court as hereinbefore stated, Samuel B. Pierce conveyed to Augusta Pierce by guardian's deed, the homestead farm and the Cavendish pasture, and that on the same day she conveyed it back to Samuel B., who thereafter upon the same day conveyed to Gilbert A. Davis the homestead farm. As a part of that transaction, Samuel B. gave Davis his note for $1,000, and Davis gave Samuel B. a bond to reconvey said homestead farm upon the payment of the note. The master found that the transaction was not a sale, but simply a mortgage to secure the payment of Samuel B.'s personal note for $1,000 to Davis; that the title to the meadow farm was still in the estate of Hannah B., and he therefore disallowed the item of $4,000.

The debit side of the guardian account, as presented, con-

sisted of several items, most of which were allowed by the commissioner. Those that were not so allowed were the following:

No. 1. This item was for building the barns and moving the "White House," as hereinbefore stated, and it was disallowed by the commissioner upon the grounds previously stated.

No. 2. This item was a charge of ten dollars per week for the support of Hannah B. Pierce from the time Samuel B., was appointed her guardian until the day of her death. The commissioner found that her support furnished during that time was reasonably worth seven dollars per week; that the part of it furnished by Samuel B. was worth three dollars per week, and the part furnished by Augusta four dollars per week, and he allowed the estate of Samuel B. at the rate of three dollars per week.

The commissioner also found in his first and a subsequent report that Augusta never made any contract with Samuel B. to care for their mother, but rendered this service upon her own account.

No. 9. This item was for services as guardian. It was disallowed by the master upon the ground that, having taken all the property of his ward and kept no account of the same, he was not entitled to compensation.

No. 12. It appeared that Burton B. Pierce as administrator of Samuel B. Pierce, took possession of the estate of Hannah B. upon an order of the probate court; and this item was for services rendered in the care of such real estate in pursuance of that order.

Pollard, the administrator of Hannah B. Pierce, claimed that after his appointment he was entitled to the possession of her real estate, and that therefore Burton B. had no right to the possession of said real estate, and could receive no compensation for taking charge of the same. The commissioner disallowed the item upon that ground.

It appeared that Samuel B. sold the Preston lot in pursuance of the license obtained as hereinbefore stated for the sum of three hundred and twenty-five dollars. The appellant insisted that the estate should stand charged with this amount, and the commissioner so held.

The appellant, being the administrator of Hannah B. Pierce, presented a receipt for one thousand three hundred and sixty-three dollars, signed by Samuel B. Pierce, dated December 12, 1869, which the commissioner disallowed.

Burton B. presented a receipt dated April 14, 1866, signed by Hannah B. Pierce for the sum of five hundred dollars, which was also disallowed.

The appellant offered in evidence a note for·one thousand three hundred dollars executed by Samuel B. Pierce to Hannah B. Pierce, dated April 14, 1866, payable on demand. The commissioner disallowed this also.

From the time he was appointed guardian in 1887 until his death in 1894, Samuel B. Pierce had the entire use of the homestead farm and the Cavendish pasture. As before stated he kept no account whatever of his receipts from the same. The commissioner charged him with a rental of one hundred and fifty dollars per year.

As the account was stated by the commissioner, therefore, the estate of Samuel B. stood charged with the cash received from the sale of the bank stock, with that received from the sale of the Preston land, with the rent of·the farm after May, 1877, and with the balance of interest; and stood credited with the support of his ward at the rate of three dollars per week from May, 1877, and with certain other items connected with his administration as guardian. When this report was filed the appellee excepted and moved to recommit, and thereupon the court ordered it recommitted for the sole purpose of stating what, if anything, was due from Samuel B. to Hannah B., or *vice versa*, at the time said Samuel was appointed guardian of Hannah B. After hear-

ing, the master reported in that respect the following facts.

Upon the death of his father, Alanson, Hannah B. was appointed guardian of Samuel B., and continued to act as said guardian until he became of age. In 1852, that being the first year after she became his guardian, she returned an inventory to the probate court, from which it appeared that she had in her hands five hundred and twenty dollars and eleven cents. It did not appear from the records of the probate court that she had ever settled her account as guardian or that she had ever paid over this or any other sum to the said Samuel B.

August 8, 1895, Pollard, the administrator of Hannah B. Pierce, was cited before the probate court of Windsor district on the application of Burton B. Pierce, administrator of Samuel B. Pierce, to settle the guardian account of the said Hannah, as guardian of the said Samuel, and such proceedings were had therein that it was adjudged that Hannah B. Pierce's estate was indebted to the estate of Samuel B. Pierce in the sum of one thousand eight hundred and seventy-five dollars and sixty-nine cents. An appeal was taken from the judgment, and that appeal was still pending. The commissioner found that in 1860, after becoming of age, Samuel B. bought over one hundred sheep for the sum of one thousand four hundred dollars ; that upon his return from Claremont in 1869 he had very little, if any, means ; that the notes and receipts referred to in the commissioner's report were given as therein stated. It did not appear that Samual B. in his lifetime had ever made any demand upon his mother for the paying of what might be due from her to him. The commissioner found that Samuel B. never expected to pay his mother the note or the receipt and never expected to receive anything from her for his services and expenses in building the barn and moving the "White House." From all these facts he found that nothing was due from the one to the other when Samuel B. was appointed guar-

dian in 1887 and he accordingly disallowed all items both of debt and credit up to that time.

Upon the hearing under this order of recommittal, the commissioner received some testimony tending to show that Samuel B. had hired Augusta to care for their mother, but the commissioner still found that notwithstanding said testimony there was no such contract between Augusta and Samuel B.

The report being the third time recommitted to the commissioner, it was made to appear to him that the bank stock with which he had charged the estate of Samuel B., was sold by him and the money received previous to the time he had been been appointed guardian of his mother, viz: March, 1886; that said Samuel B. then represented that said Hannah B. was of unsound mind, and that he had the entire charge of all her affairs; that he did not expect at that time to account for the proceeds of this stock. The commissioner submitted the question whether upon this finding the amount previously allowed by him should be disallowed.

The appellee, Burton B. Pierce, took various exceptions to the report of the commissioner which sufficiently appear from the opinion.

*Gilbert A. Davis* and *W. B. C. Stickney,* for Samuel B. Pierce's estate.

The decision of the probate court upon the guardian's account was conclusive. *Waterman* v. *Wright,* 36 Vt. 164; *Probate Court* v. *Slason et al.,* 23 Vt. 306; *Bailey et al.* v. *Bailey et. al.* 67 Vt. 501.

The record of the probate court and the deeds put in evidence showed that the sale of the homestead farm to Davis was an absolute sale, and the account of Samuel B. should have been stated accordingly. *Wood* v. *Doane,* 20 Vt. 612; Rice, Ev. 216; *Phelps* v. *Park,* 4 Vt. 488;

*Farr* v. *Putnam*, 60 Vt. 54; 2 Perry, Trusts, s. 910; *R. & S. R. R. Co.* v. *Miller & Knapp*, 47 Vt. 152.

Samuel B. Pierce or his representative had a right to retain the estate of his ward, Hannah B. Pierce, until his lien for services and disbursements was discharged upon settlement of his account. *Austin* v. *Bailey*, 37 Vt. 219; 1 Roberts Dig. 566–7; *Alexander, Admr.*, v. *Stewart*, 50 Vt. 87; *Field* v. *Wilbur*, 49 Vt. 165.

*Stickney & Sargent* and *W. E. Johnson* for Hannah B. Pierce's estate.

The pretended sale of the homestead farm to Davis was an attempt to mortgage the property of his ward to secure the payment of his own debt, and this a guardian cannot do. *Green* v. *Sargeant*, 23 Vt. 466.

The appeal from the decision of the probate court as to the amount due from Hannah B. Pierce, as the guardian of Samuel B., vacated that decision. *Phobate Court* v. *Gleed*, 35 Vt. 24; *Woodbury* v. *Woodbury's Estate*, 48 Vt. 94.

The commissioner properly received testimony to show that the deed to Davis, though absolute upon its face, was in reality a mortgage. *Gibson* v. *Seymour*, 4 Vt. 518; *Seymour* v. *Darrow et al.*, 31 Vt. 131; *Merchant's National Bank* v. *Weeks*, 53 Vt. 115; *Rich, Exr.* v. *Sowles, Admr.*, 64 Vt. 411.

The administrator of Hannah B. Pierce was entitled to the possession of her real estate, and the probate court had no jurisdiction to direct the administrator of Samuel B. to take possession of the same, nor can such administrator now be allowed compensation for so doing. *Dunbar* v. *Dunbar, Exr.*, 3 Vt. 480; *Alexander* v. *Stewart*, 50 Vt. 89.

Inasmuch as Samuel B. kept no account of his transactions with his ward, which renders it impossible to fairly state such account now, he cannot be allowed for his ser-

vices as guardian. *McClosky* v. *Gleason, Admr.*, 56 Vt. 264; *Re Edmund Hodges' Est.*, 66 Vt. 74.

TYLER, J.    Alanson Pierce died in the year 1851, leaving by will all his real and personal estate, of considerable value, to his wife, Hannah B. Pierce, excepting a legacy of $600 to each of his three children.    The home farm consisted of a valuable meadow in Weathersfield, which produced from sixty to seventy tons of hay annually.    The farm was well stocked, and there was other personal estate. In the year 1851 Hannah B. was appointed guardian of her son, Samuel B., who was then twelve years old, and in March, 1852, she filed in the probate court an inventory showing that she then had in her hands $520.11 belonging to her ward.    The records do not show that she ever settled her account as guardian.    She continued to live on her farm which she managed successfully, and prior to 1869 increased her estate besides supporting herself and family. She built a new house on the meadow farm a few rods distant from the one that had been occupied by the family.    In 1860 Samuel married and moved to Claremont, N. H., where he remainded till the fall of 1869, when he returned to his mother's farm and moved into the old house.    He had accumulated but little, if any property.    His mother, then seventy years old, was living in the new house, her family consisting of her daughter Augusta, who was then forty years old, and four children of her deceased son Fernando. After Samuel's return he worked for himself part of the time and also assisted in carrying on the home farm.    His wife died in 1878, after which Augusta did the work in his house with the assistance of his children, going there daily from the new house where she lived with and cared for her mother. In 1881 the mother became partially insane, and Samuel gradually assumed the management of the farm, while his sister took charge of the household affairs.    Samuel bought and sold stock for the farm and was the ostensible owner of

the stock and the manager of the farm, but this was a position which he assumed; it was not by virtue of any contract with his mother. In that year Samuel unintentionally, but through gross carelessness, set fire to the barns and they were destroyed with all their contents, after which he moved into the new house, where he afterward resided with his mother and sister. After the burning of the barns he built a new one at large expense, but it was poorly adapted to the use of the farm. The timber for it was partly cut upon the farm and partly purchased, and the neighbors contributed their assistance in its construction. Samuel also moved the new house on to the site of the old one, which work was wholly unnecessary. He superintended the building and moving, which were completed in 1885. His mother was mentally incapable of assenting to or dissenting from this work. Under his management her estate finally became reduced to her farm and household furniture. She held a note against him dated April 14, 1866, for $1,300 and a receipt dated Dec. 12, 1869, for $1,362. He held a receipt against her for $500, dated April 14, 1866.

Samuel never kept any account of his receipts and disbursements in the management of his mother's affairs either before or after his appointment as guardian. Augusta was unmarried and lived with her mother without any contract for or expectation of compensation. There never was any contract between her and Samuel in respect to her labor. She was no more a member of his family than he was of hers.

Samuel was appointed guardian of his mother May 4, 1887. He never settled his guardianship account. July 18, 1887, as guardian and under license from the probate court, he conveyed by deed the farm and Cavendish pasture to Augusta, who on the same day reconveyed the same by deed to him as guardian. Nothing was paid as a consideration for either conveyance. On the same day Samuel conveyed the meadow farm by deed to Gilbert A. Davis, who gave

him a bond to reconvey the same to him on the payment of his promissory note to Davis for $1,000 which was Samuel's personal debt. All the parties knew about the deeds, bond and note. The transaction was intended by them all as a mortgage. The license from the probate court recited that the guardian had applied for license to sell for the purpose of "putting the proceeds at interest or investing the same in stocks and bonds."

Samuel had all the products of the farm after his return in the fall of 1869, to May, 1887, except to the amount of $75 a year used by his mother, and thereafter until the time of his death, Jan. 5, 1894, he had the entire use. The value of the rent from April 1, 1870, to April 1, 1887, was $200 a year, and thereafter until Jan. 5, 1894, $150 a year, he paying the taxes and making the ordinary repairs.

In the year 1893 Samuel appeared by request before the probate court to settle his guardianship account. He then stated that he had kept no account and thought the accounts ought to be jumped and called even.

Hannah died Jan. 23, 1892, and the appellant Pollard was appointed administrator of her estate Feb. 5, 1894. Her heirs were Samuel, Augusta, and the children of the deceased son. The appellee, Burton B. Pierce, was appointed administrator of Samuel's estate Jan. 13, 1894, and Jan. 23, 1894, he was appointed administrator of the estate of Augusta, who died in December, 1893, intestate, leaving no property other than her share in the estate of her mother.

On August 8, 1895, Hannah's administrator having been cited before the probate court upon the petition of Samuel's administrator to settle Hannah's account as guardian, it was adjudged and decreed that her estate was indebted to her ward's estate in the sum of $1,875.69. Hannah's administrator appealed.

At the hearing before the commissioner Samuel's administrator presented an account, as he claimed it, of Samuel's

guardianship of his mother. The exceptions relate to the items of this account, which are as follows:

| 1887. | *Cr.* | | |
|---|---|---|---|
| June. By avails of sale of real estate of Hannah B. Pierce, - - - - - | | $4,000 | 00 |
| By cash from bank stock, - - - | | 272 | 00 |
| | | $4,272 | 00 |

*Dr.*

For payment of various sums (giving items), for material purchased, not produced on the farm, and for labor in erecting buildings on farm, · $2,135 00

For expense of support of ward from May 4, 1887, to her death, June 23, 1892, 266 and 5-7 weeks, at $10 per week, - - - - 2,667 00

Then follow ten items for burial expenses, probate fees, advertising, taxes, and guardian's expense in rendering account, about which there was no contest and which amounted to 192 72

For guardian's services and expenses from May 4, 1887, to June 23, 1892, 5 years, 1 month, 19 days, - - - , - - - - 325 00

For care of farm after death of Samuel B. Pierce, 9 months, under direction of probate court, to September, 1894, at $25 per month, in addition to products, - - , - - - 228 00

For care of farm after Sept. 12, 1894, under direction of probate court, - - - - * * * *

1. It did not appear of record that Hannah had settled with her ward. It was competent for the appellant to show that she had in fact paid over to him all the money she received, and as tending to show this evidence was admissible as to the ward's financial condition and his occasion to use money about the time he became of age. As the appellee introduced the decree of the probate court as evidence of the

indebtedness of Hannah's estate to that of her ward, it was certainly competent for the appellant to offer evidence tending to show that the demands upon which the decree was based had been paid; also that the decree had been appealed from.

2. From what has already been stated in respect to Samuel's occupancy of the farm from the time of his return to it in 1869 until April, 1871, it is wholly immaterial what he furnished his mother between those dates, for her support, besides the farm products.

3. The finding that there was no occasion to move the new house, that the cellar could have been drained, and that the expense incurred in moving the house was needless, covers this point in the case.

4. It is distinctly found in the first report that there was no contract between Samuel and Augusta; that there was no evidence that she intended to charge him or her mother for her services. The report was not recommitted for further finding on this point, but at the second hearing the appellee was permitted to introduce some newly discovered evidence to the effect that Samuel was once heard to say in his sister's presence that he had hired her to take care of his mother and that Augusta said she always had taken care of her. Upon considering this evidence and the other evidence in the case the commissioner repeated his former finding that Samuel did not hire his sister; so there is no force to the exception.

5. This exception relates to several rulings admitting and excluding evidence. The appellee sought to justify the sale of the real estate, and gave credit for $4,000 as the proceeds. It was competent for the appellant to show the entire transaction—the giving of the deeds, note and bond, the purpose for which they were given and Samuel's continued occupancy of the premises—as bearing upon the question whether the transaction was in fact a conveyance or was in

effect a mortgage. The several instruments were admissible in this view.

What Samuel said to Mr. Davis when he gave him the $1,000 note—what he wanted the money for—was a declaration in the party's own favor, the other party not being present, and was not admissible. The conversation between Samuel and Burton B. Pierce and between the latter and Watkins was properly excluded for the same reason.

The appellee claimed to be allowed for Samuel's labor and expense in building the barns. It was competent for the appellant to show by the witness Amsden that the neighbors contributed their assistance in building the barns and moving the house.

9. The finding of the commissioner in respect to Samuel's management of his mother's farm and affairs sufficiently covers the ground to which this exception relates. To have reported more in detail about supplying the table and clothing for his mother and sister would not have changed the case in its legal aspects.

10. This exception is to the disallowance of the $4,000 item of credit. The facts reported show that the conveyance made by Samuel was in effect a mortgage to secure the payment of his $1,000 note instead of a conveyance to raise money for investment which was the purpose stated in his application for a license. Whether the conveyance was valid as a mortgage we are not called upon to decide, but it was not a conveyance from which Samuel realized $4,000 or any other sum with which to credit his mother's estate. In this view the return upon the license, showing that the real estate had been conveyed for a different purpose from that represented in the application, was immaterial, though it is one of the exhibits.

11. The appellee excepts to the allowance for rent of the farm and pasture after the termination of Samuel's guardianship of Hannah by her death, and insists that in any event too large a sum was allowed.

The appellee presented Samuel's guardian account to the probate court, which passed upon it and made a decree. An appeal was taken and the case went to the county court, which is a higher court of probate, and was sent out to a commissioner. The appellee there presented the account, containing items of debt and credit, "as he claimed it should be." It contained a charge for taxes paid in the year 1894, a charge for the appellee's services in the care of the farm from the time of Samuel's death to September 1, 1894, and a charge for like services from that date until the time of the trial. The appellant contested the last two items and others, and claimed that Hannah's estate should be credited with additional items, among them the item for rent. The accounts were fully litigated before the commissioner, but upon the filing of the report the appellee excepted to the allowance of so much of the charge for rent as accrued after Hannah's death and the consequent termination of the guardianship. The ground of exception is not stated in the brief, but it was argued that it should have been presented to the commissioner on Samuel's estate. The appellee by his own action drew these accounts relative to the care of the farm on one side and to the rent of it on the other, after the ward's death, into examination and adjudication by the commissioner, and he cannot now be heard to contend that a part of a certain item should have been presented to commissioners on Samuel's estate and the jurisdiction of the probate court obtained in that way instead of the way adopted by him.

It is evident that the commissioner made Samuel's estate chargeable with rent in accordance with what appeared to have been the value of the farm products, especially of the hay-crop. Samuel had the products of the farm seven seasons, which, at $150 a year, made the item of $1,050.

14. The commissioner disallowed the $1,300 note given by Samuel to Hannah, April 14, 1866, after receiving it in

evidence, and the appellant took no exception; so the appellee was not harmed by the ruling.

15. This was to the admission of a receipt for $1,363 given by Samuel to his mother December 12, 1869. The appellee, under the appellant's exception, introduced a receipt for $500 given by Hannah to Samuel, April 14, 1866. The commissioner subsequently found upon competent evidence that on May 4, 1887, when Samuel was appointed guardian of his mother, there was nothing due from either party to the other, so the exceptions to the admission of the receipts became immaterial.

16. The appellant, Pollard, was appointed administrator upon Hannah Pierce's estate February 5, 1894, whereupon the law committed the possession and care of the farm and other property of the estate to him. The services of Burton B. Pierce for care of the farm as charged in items 12 and 13 were not claimed to have been rendered under any contract with Pollard, administrator, and were properly disallowed.

17. From the manner in which Samuel managed his ward's estate, as shown by the report, he was entitled to no compensation as guardian. *Re Hodges' Estate*, 66 Vt. 70, and cases cited in the opiniou.

18. Upon the findings of the commissioner it is immaterial whether the heirs of Fernando Pierce were of full age July 18, 1887, or not. There is no finding and no request to find that these heirs had any participation in or knowledge of Samuel's transactions in the settlement of his ward's estate, and no question of acquiscense can be raised as to them.

The other exceptions taken by the appellee at the trial were not insisted upon in this court.

The appellee filed four exceptions to the acceptance of the report. As to the 1st and 2nd: We have discovered no error in the commissioner's rulings admitting and excluding evidence, and his decision that there was nothing due from

one party to the other at the time Samuel was appointed guardian is conclusive as a finding of fact. Interest was properly allowed. The other exceptions we have already considered.

At the second hearing the commissioner learned that the bank stock was sold by Samuel prior to May 4, 1887, and after his mother became insane, and he ·therefore charged Samuel's estate with the avails. He states the account as allowed by him as follows:

THE ESTATE OF HANNAH B. PIERCE,

*In account with* .

S. B. PIERCE, late guardian,

| 1887. | *Cr.* | |
|---|---|---|
| Jan. 30. | By cash from sale of bank stock, - | $ 272 00 |
| July 31. | "   " received from sale of Preston land, - - - - - - | 325 00 |
| 1894. | | |
| Jan. 3. | By rents of real estate since May 4, 1887, at $150, - - - - | 1,050 00 |
| | By balance interest due Jan. 23, 1892, | 147 43 |
| | "     "      "     " May 28, 1895, | 115 15 |
| | | $1,909 58 |

The same,

*Dr.*

| To support of ward from May 4, 1887, to her death, June 23, 1892, 266 5-7 weeks, at $3, - | $ 800 00 |
|---|---|
| (Add ten items amounting to - - - · - | 192 73) |

| Balance due Hannah B. Pierce estate May 28, 1895, - - - - - - - - | $916 85 |
|---|---|

Upon the facts reported the note and receipts were properly disallowed.

43

Nearly all the findings, allowing and disallowing items, were questions of fact for the decision of the commissioner. As Samuel carried on the farm and took the products he was properly chargeable with rent, as upon an implied promise. The value of the rent, and what was a reasonable compensation per week for the support of his ward, in the circumstances, were questions of fact.

It is found that the old barns were burned through Samuel's fault. Whether for this reason he considered it his duty to replace them and furnish what materials and labor were required in addition to what the farm furnished and the neighbors contributed in labor and money, is not stated, but it is found that he did not intend to charge his mother for building the barns nor for moving the house. In the same connection it is found that he did not expect to pay his mother his $1,300 note nor his receipt for $1,360.

As before stated, whether Hannah had paid her ward the amount which she at one time held for him was a question of fact.

*Judgment for the appellant to recover $930.76 and costs affirmed.*